■ In the Matter of ESTA NASS, Petitioner, v JOSEPH D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review so much of a determination of the respondent Commissioner of the New York State Department of Social Services, dated March 26, 1982, and made after a statutory fair hearing, as affirmed a determination of the local agency discontinuing a public assistance grant to the petitioner and her family.

Petition granted, determination of the respondent State Commissioner annulled insofar as reviewed, on the law and the facts, with costs, petitioner's public assistance grant reinstated, and she is awarded all public assistance withheld from her, her husband, and their minor children, pursuant to the notice of discontinuance, dated January 6, 1982, and decision after fair hearing dated March 26, 1982.

The essential facts are not in dispute. Esta Nass, the petitioner, had been receiving public assistance, under the home

relief category, for herself, her husband, and minor children. By "Notice of Intent to Change The Public Assistance Grant", dated January 6, 1982, the petitioner was informed of the local agency's intent to discontinue public assistance because: "We have received information regarding your bank accounts. According to our records you may reapply in June, since you have resources available to you which should last until that time".

At the request of the petitioner's husband, Isak Nass, a fair hearing was conducted as to, *inter alia,* the local agency's discontinuance of public assistance. Present at the hearing were the petitioner and a representative of the agency.

In support of the discontinuance, the agency representative stated that:

"The agency records indicate that through a computer run initiated in November of 1981, it was discovered that Isak and Esta Nass had savings accounts at the Mutual Savings Bank. There were four accounts totaling $1,144 * * *

"And in addition, there was another account in their son Shmeil's name at the Jamaica Savings Bank, with a balance of $620.41, bringing the total resources to $1,764. The Agency records indicate that none of these accounts was ever reported to the Department, and that the resources exceed the $1,500 [*sic*] resource limit which was established as of January 1, 1982. Therefore, January 6, 1982, the Agency sent a notice of discontinuance advising that the case would be discontinued since there were available resources to meet their needs".

The agency representative acknowledged that the monthly cash grant to the petitioner and her family was $418, and, further, the representative conceded that the family's resources "[a]pparently * * * will not last until June".

In essence, the petitioner, *pro se,* testified without contradiction that savings accounts had been opened for four daughters with gifts of money they received when they were born in the 1960's. The accounts, which were held in trust by the petitioner and her husband, amounted to approximately $1,100. Except for the gifts, no deposits had been made in any of the accounts since 1965. However, interest has continued to accrue.

A savings account was also opened for the petitioner's son, Shmeil, with moneys he received as gifts for his Bar Mitzvah. According to the petitioner, Schmeil gave the bank book to his grandmother to hold "until he is of college age. That way he can't go to the bank and get that money". Shmeil intended to use the money for his college education.

The petitioner made application for public assistance for the first time in 1976 or 1977. The accounts were not "reported" because the petitioner's understanding apparently was "that whatever money is the children's under a certain amount" need not be disclosed.

On or about February 23, 1982 the hearing officer recommended, *inter alia,* that the agency's determination to discontinue public assistance should not be affirmed. The State Commissioner, by decision dated March 26, 1982, rejected the hearing officer's recommendation, concluding that,

"Public Law 97-35, effective January 1, 1982, has established a limit of $1,000.00 on the amount of resources that a household may retain and still be eligible for assistance. This provision, also found in Section 352.23(b) of the Regulations of the State Department of Social Services, sets strict exclusions from this rule, and allows only a home used as a residence, and an automobile of specified value to be excluded from the broad definition of resources.

"The evidence in this case establishes that *the appellant's children have bank accounts* which, taken together, exceed the $1,000.00 family resource level. Accordingly, the agency determination to discontinue the appellant's grant was correct * * *

"The appellant may reapply should the family's resource level fall within the stated maximum" (emphasis added).

By order to show cause, dated July 23, 1982, the petitioner commenced this proceeding pursuant to CPLR article 78, seeking a judgment "[r]eversing and annulling the Decision After Fair Hearing by respondent BLUM dated March 26, 1982 [and] [d]irecting respondent D'ELIA to restore any grants of monies withheld as a result of the Notice of Discontinuance dated January 6, 1982 and Decision After Fair Hearing dated March 26, 1982".

On November 3, 1982, the Supreme Court, Nassau County (Kelly, J.), transferred the instant article 78 proceeding to this court, pursuant to CPLR 7804 (subd [g]).

Section 352.23 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York in relevant part provides:

"(a) Resources shall be so utilized as to eliminate or reduce the need for public assistance, rehabilitate the client and conserve public funds through assignment and recovery. Applicants and recipients shall generally be required to utilize available resources and to apply for and otherwise pursue potentially available resources. The utilization of resources and the application

of income therefrom should be in accordance with the requirements specified in subdivision (b) of this section. In establishing local policies and procedures for the utilization of resources, distinction should be made between temporary and long-term cases.

"(b) The amount of real and personal property, including liquid assets, that can be reserved for each public assistance household shall not be in excess of $1,000 equity value, excluding only:

"(1) the home which is the usual residence of the assistance unit;

(2) "one automobile, the equity value of which does not exceed $1,500 * * *

"(3) basic maintenance items essential to day-to-day living such as clothes, furniture and household appliances, and other similarly essential items of limited value".

However, in *Matter of Sabot v Lavine* (42 NY2d 1068, 1068-1069), which antedated the promulgation of the quoted regulation, the Court of Appeals stated: "In our view these sums deposited in the children's accounts are not available resources within the meaning of the statute or implementing regulation (18 NYCRR 352.23) which must be exhausted before public assistance can be made available. The sums involved are not only trivial accumulations, the record shows that they are the result of small deposits — generally $5 or $10 — representing, indisputably, birthday and holiday gifts from relatives and casual employment by the children themselves. It is, of course, reasonable and obvious to expect a person, applicant, recipient, or beneficiary, to utilize his own resources before receiving public assistance. But the broad humanitarian purpose of the Social Services Law does not contemplate that a person must be stripped bare, emotionally and economically of the small sums and personal paraphernalia of trivial value and of uncertain recurrence, before applying for public assistance. Somewhere the line must be drawn. Thus it would be absurd and cruel, and therefore unintended by statute or regulation, to consider grandfathers' watches, family pictures, family heirlooms of nominal value, toys, bicycles and small gifts to children as available 'resources' which must be sold and consumed before public assistance will be made available. Any statute or regulation, but particularly social legislation, however broad, must be interpreted and enforced in a reasonable and humane manner in accordance with its manifest intent and purpose. Neither the applicable and controlling statute, nor the regulations adopted

to implement the statute, in the absence of express language to the contrary, may be given an unreasonable and absurd interpretation".

Contrary to the respondent State Commissioner's argument that *Sabot's* rationale and holding were limited by section 352.23, we are of the view that *Sabot* has retained its vitality. Consequently, the moneys accumulated in the five bank accounts, which moneys the State Commissioner recognized was property belonging to the petitioner's children, should not qualify as "available resources" within the meaning of section 352.23. The amount involved is a "trivial accumulation", considering that it represents the total of five savings accounts owned individually by five of the petitioner's children. Four accounts were opened upon the birth of each of four of the children, the last of which account was opened more than 10 years before the petitioner even made application for public assistance. The moneys deposited in those four accounts were given to the children as gifts at the time of their birth, and, with the exception of interest accrued over the years, there have been no additional contributions to the accounts. The fifth account, totaling some $620, has been designated as the son's "college fund".

Moreover, based upon the parties' submissions to this court, we are not persuaded that "[t]he amount of real and personal property * * * that can be reserved for each public assistance household" exceeds $1,000. According to those submissions, two of the accounts are owned by two of the petitioner's daughters who are not listed as members of the public assistance household. These accounts had a total balance of $814.10, which, when deducted from the amount cited by the respondents, reduced the available resources of the public assistance household below the $1,000 limit.

Accordingly, the petition should be granted, the determination of the State Commissioner insofar as it affirmed the determination of the local agency discontinuing public assistance to the petitioner and her family annulled, and the grant of public assistance reinstated. Mollen, P. J., Gibbons, Bracken and Niehoff, JJ., concur.